UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE

**BANKRUPTCY NO.**
**RAHMAAN M.  NANCE**                                  **12-10271**
**TRICIA  M. NANCE**                                        **SECTION "B"**

DEBTORS                                                          CHAPTER 13

## MEMORANDUM OPINION

This matter came before the court on May 16, 2012 as a hearing on the debtors' objection

to proof of claim #5 filed by Capital One Auto Finance (P-17) and the response filed by Capital

One Auto Finance (P-20). For the following reasons, the court grants in part and denies in part

the debtors' objection.

## FACTUAL AND PROCEDURAL BACKGROUND

The debtors, Rahmaan Nance and Tricia Nance, filed a Chapter 13 petition on January

31, 2012.[1] Tricia Nance had purchased a 2007 Chevrolet Avalanche LT from Banner of N.O.

LLC d/b/a Banner Chevrolet (Banner Chevrolet) on April 11, 2009.[2] In doing so, she entered into

a Retail Installment Contract with Banner Chevrolet that granted a security interest in the

vehicle.[3] Capital One Auto Finance (Capital One) is the current holder of that security interest.[4]

At issue in this matter is how to value the vehicle for purposes of determining the amount due to

Capital One under the Nances' Chapter 13 plan.

Because the vehicle was purchased more than 910 days before the Chapter 13 petition

was filed, the "cram-down provision" applies.[5] Therefore, the Nances' plan must propose to pay

---

[1]  Voluntary Petition (P-1).
[2]  Proof of Claim 5-1 at 6.
[3]  *Id.*
[4]  Proof of Claim 5-1 at 8.
[5]  11 U.S.C. § 1325(a)(5)(ii).

Capital One only as much as the vehicle is worth.[6] Furthermore, because the vehicle is personal

property which the Nances purchased primarily for personal, family, or household use,[7] the value

to be attributed to the vehicle is its retail value.[8]

The debtors value the vehicle at $19,137.50,[9] while Capital One assigns it a value of

$21,400.00.[10] The debtors calculated their estimate of the vehicle's value by averaging the

"Clean Trade-in" ($18,750.00) and "Clean Retail" ($22,275.00) values that the NADA Guide

lists for a vehicle of the same make, model, and year as Ms. Nance's and then deducting

$1,375.00 for the high mileage of the vehicle.[11] The high-mileage deduction is prescribed by the

NADA Guide in its "Mileage Table."[12]

Capital One reached its final value by beginning with the NADA Clean Retail value of

$22,275, adding $225.00 for optional equipment included at the time of sale (fixed running

---

[6]  *See id.*; 11 U.S.C. § 506(a).
[7]  Proof of Claim 5-1 at 6.
[8]  *See* 11 U.S.C. § 506(a)(2).
[9]  Memorandum in Support of Debtor Objection to Proof of Claim (P-27) at 1. There seems to be some discrepancy among the debtors' various recitations of the value of the vehicle. In the petition, they list its value at $19,153.00. Voluntary Petition (P-1) at 43. In their Objection to Proof of Claim, they alternatively assign it a value of $19,137.50 and $19,153.50. P-17 at 1-2. In the memorandum they submitted in this matter, they give values of $19,137.50 and $19,137.00. The court will accept the value of $19,137.50 that they state on the first page of their memorandum, where they also explain their calculation.
[10]  Response to Objection to Proof of Claim (P-20) at 1. In its response, Capital One lowered its valuation of the vehicle to this figure from the $22,040.00 stated in its proof of claim.
[11]  Memorandum in Support of Debtor Objection to Proof of Claim (P-27) at 1.
　　　The NADA "Clean Retail" value, which is the only retail value listed in the guide, and its "Clean Trade-In" value assume that the vehicle is in "clean condition," according to NADAguides.com. NADAguides.com defines a "clean" vehicle as
　　　　　. . . [A] vehicle with no mechanical defects and passes all necessary inspections with ease. Paint, body and wheels have minor surface scratching with a high gloss finish and shine. Interior reflects minimal soiling and wear with all equipment in complete working order. Vehicle has a clean title history.
On the other hand, NADAguides.com defines a vehicle in "average" condition (the condition assumed by its "Average Trade-In" value) as
　　　　　A vehicle that is mechanically sound but may require some repairs/servicing to pass all necessary inspections; Paint, body and wheel surfaces have moderate imperfections and an average finish and shine which can be improved with restorative repair; Interior reflects some soiling and wear in relation to vehicle age, with all equipment operable or requiring minimal effort to make operable; Clean title history; Vehicle will need a fair degree of reconditioning to be made ready for resale.
[12]  *See* Objection to Proof of Claim (P-17) at 4.

boards and a towing/camper package), and subtracting $1,100.00 for high mileage.[13] Capital One

determined both the value of the equipment and the high mileage deduction by referencing the

NADA Guide.[14]

   As discussed below, many bankruptcy courts have incorporated the NADA Guide into

their methods for reaching the retail value of a vehicle under § 506(a)(2). They take a range of

approaches to using the NADA Guide, including Capital One's proposed method of using the

full Clean Retail value and the Nances' method of averaging that value with the lower Clean

Trade-In value. Having surveyed the various approaches that other courts have used and their

relevant decisions, the court now decides to adopt the Nances' averaging method as the most

appropriate way to establish a presumptive retail value for a vehicle.

## LEGAL BACKGROUND

   Under 11 U.S.C. § 1325(a)(5)(ii), the "cram-down provision," a debtor's Chapter 13 plan

must propose to pay a secured creditor an amount at least as great as the creditor's allowed

secured claim.[15] Section 506(a)(1), 11 U.S.C. defines a secured creditor's allowed secured claim

as "the value of such creditor's interest in the estate's interest in [the] property." The 2005

Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) added § 506(a)(2),

which further provides:

> If the debtor is an individual in a case under chapter 7 or 13, such value with
> respect to personal property securing an allowed claim shall be determined based
> on the *replacement value* of such property as of the date of the filing of the
> petition without deduction for costs of sale or marketing. With respect to property
> acquired for personal, family, or household purposes, replacement value shall

---

[13]  Response to Objection to Proof of Claim (P-20) at 1.
        The discrepancy between the parties' high-mileage deductions apparently results from the fact that Capital
One estimates the vehicle's mileage at 89,574, Ex. A to Objection to Chapter 13 Plan (P- 13-1) at 1, while the
debtors state that the vehicle's mileage at the time of filing was 93,250, Reply to Capital One Auto Finance's
Objection to Confirmation (P-15) at 1.
[14]  Ex. A to Objection to Chapter 13 Plan (P- 13-1) at 1.
[15]  Because the Nances purchased the vehicle more than 910 days prior to filing for bankruptcy, the "hanging
paragraph" of § 1325(a) does not apply.

mean *the price a retail merchant would charge* for property of that kind considering the age and condition of the property at the time value is determined.[16]

The first sentence of § 506(a)(2) is widely recognized to be a codification of the Supreme Court's holding in *Associates Commercial Corp. v. Rash*[17] that the appropriate value to be used to determine the amount of the creditor's allowed secured claim under § 506(a) is the amount the debtor would have to pay to replace the property ("replacement value"), rather than the amount the creditor would receive from a foreclosure sale or an amount halfway between replacement value and foreclosure value.[18] In a footnote, the Court had explained in *Rash* that by mandating that replacement value be used, it was leaving to the bankruptcy courts the case-by-case task of determining whether "replacement value" is the equivalent of retail value, wholesale value, or "some other value."[19] With the second sentence of § 506(a)(2), however, the BAPCPA amendments directed that for certain types of property—personal property acquired for personal, family, or household use—replacement value is retail value, which must take into account the age and condition of the property.

Neither the Fifth Circuit Court of Appeals nor any other federal circuit court has weighed in on the subject of how to determine the retail value of a personal-use vehicle under the new § 506(a)(2).[20] Furthermore, no firm guidance can be found from the bankruptcy courts in the Fifth Circuit.

---

[16]  Pub. L. No. 109-8, § 327, 119 Stat. 99, 128 (2005) (emphasis added).
[17]  520 U.S. 953, 117 S. Ct. 1879, 138 L. Ed. 2d 148 (1997).
[18]  520 U.S. at 956, 965; *In re Scott*, 437 B.R. 168, 172-73 (Bankr. D.N.J. 2010); *In re Finnegan*, 358 B.R. 644, 648 (Bankr. M.D. Pa. 2006) (citing *In re Nice*, 355 B.R. 554, 557 (Bankr. N.D.W. Va. 2006)).
[19]  520 U.S. at 965 n.6.
[20]  *In re Morales*, 387 B.R. 36, 41, 45 (Bankr. C.D. Cal. 2008).
     Prior to the BAPCPA, the Fifth Circuit rejected the use of the NADA trade-in value as the value of a vehicle under § 506(a), where the bankruptcy court had used it to determine the foreclosure value of the vehicle rather than the replacement value as mandated by *Rash*. *In re Stembridge*, 394 F.3d 383, 385-86 (5th Cir. 2004). Because *Stembridge* was a pre-BAPCPA decision, though, it is not helpful in this case.

Among the courts who utilize the NADA Guide in determining the retail value of a vehicle under § 506(a)(2), four basic approaches have emerged. Under the first, courts establish a presumptive retail value for the vehicle by deducting a certain percentage from the NADA Clean Retail value.[21] Under the second, courts set the presumptive value of the vehicle at the full NADA Clean Retail value.[22] Under the third, courts make use of NADA (or Kelley Blue Book (KBB)) values as starting points but hold that the facts of each case determine which value (Clean Retail, Private-Party, etc.) should be used.[23] Finally, under the fourth approach, the one that the court has settled on, courts average the NADA Clean Retail and Clean Trade-In values.[24]

Several courts have adopted the first method of arriving at the retail value of a vehicle under § 506(a)(2)—deducting a certain percentage from the NADA Clean Retail value.[25] According to the court in *In re Mayland*, its ten-percent deduction accounts for the fact that "[t]he values listed by the NADA Guide assume that the vehicle has been cleaned, repaired, reconditioned, and otherwise prepared for sale as an automobile dealer would normally do . . . . [and] that automobiles are rarely, if ever, maintained in peak condition by debtors in bankruptcy."[26] After the presumptive value is established, the parties may introduce evidence about the individual vehicle to show that the value should be raised or lowered.[27]

---

[21]  *In re Mayland*, Bankr. L. Rep. 80, 679, 2006 WL 1476927, at *1 (Bankr. M.D.N.C. 2006) (citing *In re Rives,* 2006 WL 1314334, at *3 (Bankr. M.D.N.C. 2006)); *In re Cheatham*, 2007 WL 2428046, at *3 (Bankr. W.D. Mo. 2007); U.S. Bankr. Ct. Rules E.D. Mo., L.R. 3015-2 and Proc Manual.

[22]  *In re Eddins*, 355 B.R. 849, 852 (Bankr. W.D. Okla. 2006); *In re Morales*, 387 B.R. 36, 37 (Bankr. C.D. Cal. 2008); *In re Scott*, 437 B.R. 168, 170, 174 (Bankr. D.N.J. 2010).

[23]  *In re Berry*, 2008 WL 2064777, at *4 (Bankr. D. Vt. 2008); *In re Gonch*, 435 B.R. 857, 865 (Bankr. N.D.N.Y. 2010).

[24]  *In re Nice*, 355 B.R. 554, 557 (Bankr. N.D.W. Va. 2006); Bankr. D. Vt. R. 3012-1(b), *available at* http://www.vtb.uscourts.gov/Local_Rules_Supplement.php.

[25]  *Mayland*, 2006 WL 1476927, at *1 (citing *In re Rives,* 2006 WL 1314334, at *3 (Bankr. M.D.N.C. 2006)) (ten percent); *Cheatham*, 2007 WL 2428046, at *3 (five percent); U.S. Bankr. Ct. Rules E.D. Mo., L.R. 3015-2 and Proc Manual (three percent plus 1.5% depreciation per month).

[26]  *Mayland*, 2006 WL 1476927, at *1 (footnote omitted); *see also Mayland*, 2006 WL 1476927, at *2.

[27]  *Id.* at *1; *Cheatham*, 2007 WL 2428046, at *2 (citing *In re Campbell*, 234 B.R. 101, 103 (Bankr. W.D. Mo. 1999)).

The second method bankruptcy courts have used to value a vehicle under § 506(a)(2) is to set the presumptive value of the vehicle at the full NADA retail value, rather than first deducting a percentage from it.[28] Under that approach, the debtor bears the burden of showing that the value should be lowered from the Clean Retail value, such as by presenting evidence about the vehicle's condition or the local retail market.[29] One court that uses the NADA retail value as a "starting point" reasoned that prescribing the use of a particular retail guide "establishes a uniform approach to valuation and will provide greater consistency in the application of § 506(a)(2)."[30]

Under the third approach to establishing the retail value of a vehicle under § 506(a)(2), courts accept the use of NADA (or KBB) values but reject the automatic use of any certain guide value as a starting point.[31] Instead, they see it as the court's duty in each case to evaluate the condition of the vehicle and determine which guide value (NADA Clean Retail, KBB private-party value,[32] etc.) should be its presumptive retail value.[33]

The fourth method of valuation, the one that the court chooses—averaging the NADA Clean Retail and Clean Trade-In Values—was adopted by a few bankruptcy courts after *Rash* but before the BAPCPA amendments as a way to determine the replacement value of a vehicle under

---

[28]  *In re Eddins*, 355 B.R. 849, 852 (Bankr. W.D. Okla. 2006); *In re Morales*, 387 B.R. 36, 37 (Bankr. C.D. Cal. 2008); *In re Scott*, 437 B.R. 168, 170, 174 (Bankr. D.N.J. 2010).

[29]  *Eddins*, 355 B.R. at 852; *Morales*, 387 B.R. at 37, 45 (citing *In re Coleman*, 373 B.R. 907, 913 (Bankr. W.D. Mo. 2007); *Eddins*, 355 B.R. at 852).

[30]  *Scott*, 437 B.R. at 174; *see also In re Zambuto*, 437 B.R. 175 (Bankr. D.N.J. 2010) (an opinion issued the same day in a case with similar facts, in which the court made identical holdings).

[31]  *In re Berry*, 2008 WL 2064777, at *5 (Bankr. D. Vt. 2008); *In re Gonch*, 435 B.R. 857, 865 (Bankr. N.D.N.Y. 2010).

[32]  KBB.com defines "private-party value" as "[t]he amount a buyer can expect to pay when buying a used car from a private party."

[33]  *Berry*, 2008 WL 2064777, at *3-4; *Gonch*, 435 B.R. at 865 (quoting *Berry*, 2008 WL 2064777, at *4).

6

§ 506(a).[34] One of those courts has held that this averaging method is also an appropriate way to calculate retail value under § 506(a)(2), while another has held that it is not appropriate.[35]

In approving the continued use of the averaging method, the court in *In re Nice* reasoned that though under new § 506(a)(2) the costs of sale and marketing are not to be deducted from the retail price for purposes of valuation, deductions still must be made for "[i]tems, including warranties and reconditioning expenses, that increase the existing value of an automobile."[36] On the other hand, the court in *In re Eddins* held that under the "clear language" of § 506(a)(2), in which the BAPCPA had mandated the use of retail value, the averaging method was no longer appropriate.[37] Instead, the court held that the NADA retail value would now be the presumptive retail value of vehicles or, if a party in interest objects, the starting point for the valuation.[38]

Two bankruptcy courts in the U.S. Fifth Circuit propose by local rules to utilize the method of averaging the NADA retail and trade-in values to value a vehicle for purposes of calculating adequate protection payments.[39] It appears that the bankruptcy court for the southern district of Texas also uses the value determined using the averaging method in making its § 506(a)(2) calculation:

> In determining the principal amount due to the lien holder under the plan, the [adequate protection] payments will be deducted from the value of the vehicle, if

---

[34] *See In re Nice*, 355 B.R. 554, 557 (Bankr. N.D.W. Va. 2006); U. S. Bankr. Ct. Rules D. Vt., Vt. LBR 3012-1(b); *Eddins*, 355 B.R. at 852 (citing *In re Younger*, 216 B.R. 649, 656-57 (Bankr. W.D. Okla. 1998)).

[35] *Nice*, 355 B.R. at 557 n.6; *Eddins*, 355 B.R. at 852.

In a 2008 decision, the Vermont bankruptcy court held that it was not appropriate to mandate the use of a certain guide value in every case but did not repeal the local rule that prescribes the averaging method. *Berry*, 2008 WL 2064777, at *4-5.

[36] *Nice*, 355 B.R. at 557 (quoting 4 *Collier on Bankruptcy*, ¶ 506.03[6][a] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. 2006)).

Though the debtor in *Nice* had filed her petition in bankruptcy before the BAPCPA amendments took effect and her case was thus governed under pre-BAPCPA law, the court indicated in a footnote that it would continue to employ the averaging method in future cases. *Id.* at 557 n.6.

[37] *Eddins*, 355 B.R. at 852.

[38] *Id.*

[39] U. S. Bankr. Ct. Rules N.D. Tex., Order 2010-01(4); U. S. Bankr. Ct. Rules S.D. Tex., Rule 4001-1 (e)(4).

the value of the vehicle is less than the lien; and applied to interest if the value of the vehicle is greater than the lien.[40]

Although the bankruptcy court for the northern district of Texas has not explicitly adopted the averaging method for its § 506(a)(2) valuations, it seems likely that it too would use the same figure for calculating both the adequate protection payments due to the lienholder and for determining the principal amount due to the lienholder under § 506(a)(2).

## REASONING

This court agrees with the court in *In re Scott* that adopting the use of a certain guide to set the presumptive retail price of vehicles "establishes a uniform approach to valuation and will provide greater consistency in the application of § 506(a)(2)."[41] Furthermore, the court agrees with the *Nice* and *Mayland* courts that because a Chapter 13 debtor's vehicle is not reconditioned when she retains the vehicle, as it would be by a dealer prior to resale, the Clean Retail price should be discounted to reflect the fact that the typical vehicle is in a condition inferior to the "clean" condition assumed by the NADA Guide's Clean Retail value.[42] In most of the cases, the vehicle may have minor mechanical defects, more than minor surface scratching, an average finish and shine, or soiling in the interior.[43]

The deduction from the Clean Retail price should be large enough to account not only for the hypothetical cost of the reconditioning that a dealer would perform but also for the total value that the reconditioning would add to the vehicle's retail price. Subtracting only a high-mileage

---

[40] Bankr. S.D. Tex. R. 4001-1(e)(4).

[41] *In re Scott*, 437 B.R. 168, 174 (Bankr. D.N.J. 2010).

[42] *See In re Nice*, 355 B.R. 554, 557 (Bankr. N.D.W.V. 2006) (quoting 4 *Collier on Bankruptcy*, ¶ 506.03[6][a] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. 2006)); *In re Mayland*, 2006 WL 1476927, at *1 (footnote omitted). This is especially true of a vehicle that was purchased more than 910 days prior to the bankruptcy petition so that it falls outside of the hanging paragraph of § 1325(a).
   See *supra* text accompanying note 11 for NADAguides.com's definitions of "clean" and "average" conditions.

[43] *See supra* note 11.

8

deduction from the full NADA Clean Retail value as Capital One has done in this case is not an adequate adjustment. Neither is a five or ten percent deduction.

The court decides that averaging the NADA Clean Retail and Clean Trade-In values is the most appropriate way to use the NADA Guide to fix the presumptive retail value of a vehicle for purposes of the second sentence of § 506(a)(2). The averaging method adequately discounts the Clean Retail value and will provide a consistent approach to valuing a personal-use vehicle under § 506(a)(2). Moreover, it brings this court in line with other bankruptcy courts in the Fifth Circuit.[44] Because the court chooses to use the averaging method to reach a *presumptive* value, debtors and creditors will still be free to introduce evidence to show that the vehicle should be ascribed a higher or lower value.

After the Clean Retail and Clean Trade-In values are averaged, the resulting value should then be adjusted according to the NADA Mileage Table if the table calls for a high-mileage deduction or a low-mileage addition. And finally, the value of any optional equipment included with the vehicle at the time of sale may be added onto the vehicle's value.

## CONCLUSION

The average of the Clean Retail and Clean Trade-In values in this case is $20,512.50. As to the high-mileage deduction, the court accepts the amount of the debtors' deduction because they are in the better position to know the mileage of the vehicle.[45] Therefore, the court next subtracts $1,375.00 from $20,512.50. Finally, the court adds $225.00 for optional equipment included at the time of purchase, as Capital One has done,[46] for a total of $19,362.50. The debtors have not objected to the addition for the optional equipment or provided evidence that the vehicle did not include the equipment. Though it is unclear whether Capital One's valuation

---

[44] *See* Bankr. N.D. Tex. General Order 2010-01(4); Bankr. S.D. Tex. R. 4001-1(e)(4).
[45] *See supra* text accompanying note 13; Objection to Proof of Claim (P-17) at 3-4.
[46] *See* Response to Objection to Proof of Claim (P-20) at 1.

of the equipment is meant to reflect Clean Trade-In or Clean Retail value, the court accepts its

valuation because there is no evidence to contradict it.

The retail price of the vehicle and the amount of Capital One's allowed secured claim are

thus held to be $19,362.50.

New Orleans, Louisiana, June 22, 2012.

_J. A. Brown_

Jerry A. Brown
U.S. Bankruptcy Judge